UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GLENN K.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. C18-6054 MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in his weighing of Plaintiff's allegations about the impact of his heart disease and chronic obstructive pulmonary disease (COPD) on his functioning and this impacted the ALJ's residual functional capacity assessment as well as the Step Five findings. (Dkt. # 11 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II. BACKGROUND

Plaintiff was born in 1965, has a tenth grade education, and has worked as a machine operator using a grinder and sander and eventually a water jet operator, he has also worked as a

ORDER - 1

caregiver for his grandmother, and a forklift operator. AR at 182-183. Plaintiff was let go in 2010 after a DUI arrest that prevented him from showing up for work as a forklift operator. *Id.* at 183. Plaintiff was diagnosed with a heart issue a month later. *Id.* Plaintiff had a stent put into his heart in March 2010. *Id.* at 184. Plaintiff was last gainfully employed in February 2010. *Id.* at 183.

On February 2, 2016, Plaintiff applied for benefits, alleging disability as of July 23, 2014. AR at 91. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. After the ALJ conducted a hearing on June 6, 2017, the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 101.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since July 23, 2014.

Step two: Plaintiff has the following severe impairments: chronic heart failure, coronary artery disease, and COPD.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work, he can occasionally climb ladders, ropes or scaffolds, he can have occasional exposure to vibration, temperature and humidity extremes, and concentrated levels of dust, fumes, gases, poor ventilation, and the like.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 94-101.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-5. Plaintiff appealed the final decision of the Commissioner to this Court.

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.*

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Err in Weighing the Impact of Plaintiff's Heart Disease and COPD

The ALJ first determined that Plaintiff's severe medically determinable impairments could reasonably be expected to cause some of his alleged symptoms. AR at 95. The ALJ, however, did not find that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms to be entirely consistent with the medical evidence and other evidence. *Id.* at 95-96. If an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons that are supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 663, 678 (9th Cir. 2017). Here, the ALJ not only found that the medical evidence was inconsistent with Plaintiff's allegation, but also found that Plaintiff's lack of treatment, his failure to follow treatment recommendations, and his daily activities were inconsistent with his allegations of severity of symptoms. *Id.* at 97-99.

Plaintiff argues that the ALJ's reasons for rejecting Plaintiff's allegations did not meet the specific, clear, and convincing standard because (1) the ALJ failed to take into account the difference between a clinical setting and a work setting; (2) the ALJ erred by relying on Plaintiff's failure to follow the treatment recommendation as a basis for rejecting his allegations; and (3) the ALJ erred in finding that Plaintiff's daily activities were inconsistent with his allegations. (Dkt. # 11 at 3-8.) The Court addresses each claim of error below.

### 1. ALJ did not fail to take into account the difference between a clinical setting and a work setting.

Plaintiff argues that the ALJ failed to consider that the Plaintiff would have to tolerate any work activities on a sustained basis which is distinguishable from a report of minimal or negative findings from infrequent medical visits. (Dkt. # 11 at 4.) Plaintiff concedes that the ALJ correctly found that the medical records offered no opinion on Plaintiff's functioning or symptoms. (*Id.* at 5.) Plaintiff contends, however, that the ALJ improperly read the results of one of Plaintiff's EKGs. (*Id.*) Plaintiff does not cite to the portion in the record that identifies the EKG results or the ALJ's reliance on them. Nor does Plaintiff explain how the ALJ's reading of the EKG result is related to the claimed error of failing to take into account the difference between a work setting and a clinical. (*Id.*) Plaintiff's arguments regarding the different settings and the EKG are not articulated sufficiently to make a determination that the ALJ erred in some respect. The ALJ properly relied, in part, on the fact that no treating provider had concluded that Plaintiff was unable to perform light work – or had any other restricted activities – as a basis to reject the severity of the symptoms alleged by Plaintiff.

### 2. The ALJ did not err by relying on Plaintiff's failure to follow the treatment recommendation as a basis for rejecting his allegations.

Plaintiff next claims that the ALJ should not have considered in his analysis the fact that treatment providers had consistently and repeatedly instructed the Plaintiff to cease smoking tobacco because of his cardiac and respiratory conditions. (Dkt. # 11 at 6.) Plaintiff argues that there was no evidence that the recommendations to quit smoking were based on treatment for the cardiac and respiratory conditions as opposed to a recommendation to reduce the progression of heart and lung disease. (*Id.*) The Court appreciates the distinction that Plaintiff makes between slowing the progression of heart and lung disease and affirmative treatment for cardiac and respiratory conditions. However, as used by the ALJ in this context, the Plaintiff's lack of

ORDER - 5

motivation to slow the progression of the disease and presumably slow the increase in the severity of the symptoms from which he suffered suggested that the symptoms were not as severe as he claimed. The Court notes that the ALJ evaluated Plaintiff's reluctance to stop smoking under the rubric of whether his disinterest in quitting smoking supported a finding that his symptoms were not as serious as he alleged. Importantly, the ALJ's finding is based on medical records that indicated that Plaintiff was simply "not interested" in quitting smoking as opposed to unable to quit smoking due to an addiction. AR at 96 (citing *id.* at 659 (Plaintiff is "[n]ot interested in setting a quit date or talking about quitting smoking").

Although the case law supports Plaintiff's argument that the ALJ should not discount Plaintiff's symptoms solely because he failed to adhere to treatment recommendations to quit smoking, using the failure to quit smoking as part of the subjective symptom testimony analysis is not *per se* error. *See, e.g., Moses v. Berryhill*, C18-5055-MAT, 2018 WL 3707841 (W.D. Wash. Aug. 3, 2018 (unpublished) (citing *Ross v. Berryhill*, 711 Fed.Appx. 384, 386–87 (9th Cir. 2017) (failure to heed medical advice to stop smoking provides a tenuous basis for discounting testimony about the severity of her pain and fatigue); *Hurter v. Astrue*, 465 Fed.Appx. 648, 650 (9th Cir. 2012) ("Hurter's failure to follow prescribed treatment without adequate explanation is also relevant to a credibility analysis. Hurter continues to smoke despite warnings from her doctors regarding its impact on her lung condition and has 'decreased adherence' to her prescribed exercises due to forgetfulness.") (internal citation omitted); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (ALJ's finding a claimant continued to smoke "up until one month before her hearing, despite complaining of debilitating shortness of breath and acute chemical sensitivity[,]" was supported by the record and belied the claim of debilitating respiratory illness; even if the consideration of continued smoking was improper

given the addictive nature of cigarettes, as argued by the claimant, any error would be harmless given the other reasons for discounting the claimant's testimony)). Accordingly, the ALJ properly considered whether Plaintiff's lack of motivation to quit smoking was an indication that he was not suffering as severely as claimed.

        *3.     The ALJ did not err in finding that Plaintiff's daily activities were inconsistent with his allegations*

The ALJ noted that Plaintiff's activities were not as limiting as one would expect given the complaints of disabling symptoms and limitations. AR at 98. The ALJ found that Plaintiff had no problem with personal care, could prepare meals on a daily basis, could do household chores such as laundry and taking out the trash, was able to go outside alone, and could shop in stores. *Id.* Plaintiff argues that these activities, "in themselves fail to be a specific, clear, and convincing reason for disregarding Plaintiff's allegations." (Dkt. # 11 at 8.) The ALJ cited other factors for disregarding Plaintiff's allegations thus the argument that the daily activities alone do not meet the standard is misplaced.

Plaintiff also argues, however, that the ALJ ignored all the limitations that Plaintiff placed around these activities. For example, Plaintiff claims the ALJ failed to consider that meals he prepared were premade frozen meals; that going outside could mean simply walking to the mailbox; or that when he went shopping he would walk slowly, lean against the cart, and let his uncle grab the items off the shelf. (Dkt. # 11 at 10.) According to Plaintiff, the ALJ erred because he put more focus on the activity and not on how well the activity actually was performed. (*Id.* at 10-11.) The ALJ's focus, however, was on whether the activity was consistent with the Plaintiff's claimed limitations, not on whether the activities rendered him able to work. For example, Plaintiff testified that he was limited to resting all day, that he could not walk more than a half block without having to rest for 5 to 20 minutes, and that he "avoided pretty much

everything" due to his conditions. The daily activities cited by the ALJ are inconsistent with these stated limitations by Plaintiff.[3] It was this inconsistency that the ALJ relied upon in in discounting Plaintiff's allegations regarding the severity of his symptoms. The ALJ's determination that these activities were inconsistent with Plaintiff's symptom testimony was a reasonable interpretation of the evidence, and thus must be upheld. *See Thomas*, 278 F.3d. at 954.

Accordingly, the ALJ provided clear and convincing reasons, supported by substantial evidence, to discount Plaintiff's subjective symptom testimony.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

Dated this 21st day of June, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[3] Because the Court does not find that the ALJ erred in his weighing of Plaintiff's allegations about the impact of his heart disease and COPD, there is no basis to review the ALJ's residual functional capacity assessment nor his Step Five findings.

ORDER - 8